# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **MALISSA J. FANSLER,** | ) | |
| Plaintiff | ) | Civil Action No. 2:20cv00034 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social** | ) | By: PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

## I. Background and Standard of Review

Plaintiff, Malissa J. Fansler, ("Fansler"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Fansler protectively filed applications for DIB and SSI on June 6, 2018, alleging disability as of April 26, 2018, due to anxiety; depression; panic disorder; agoraphobia; irritable bowel syndrome; and chronic constipation. (Record, ("R."), at 15, 222-23, 227-31, 264.) The claims were denied initially and on reconsideration. (R. at 149-51, 155-61.) Fansler requested a hearing before an administrative law judge, ("ALJ"). (R. at 162-63.) A hearing was held on February 20, 2020, at which Fansler was represented by a non-attorney representative. (R. at 40-77.)

By decision dated March 12, 2020, the ALJ denied Fansler's claims. (R. at 15-33.) The ALJ found Fansler met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2023. (R. at 18.) The ALJ found Fansler had not engaged in substantial gainful activity since April 26, 2018, the alleged onset date. (R. at 18.) The ALJ determined Fansler had severe impairments, namely Hashimoto's disease; irritable bowel syndrome; mild degenerative disc disease; obesity; depressive disorder; anxiety with agoraphobia; dependent personality features and traits; and history of benzodiazepine dependence, but he found Fansler did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) The ALJ found Fansler had

the residual functional capacity to perform medium[2] work in an environment free of fast-paced production requirements that involved only simple work-related decisions and that required few, if any, workplace changes; that did not require interaction with the public; that required no more than occasional interaction with co-workers; and that allowed her to be absent from the workplace no more than one day a month. (R. at 23.) The ALJ found Fansler was unable to perform any of her past relevant work. (R. at 31.) Based on Fansler's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Fansler could perform, including the jobs of a laundry laborer, a cleaner, a clothing bagger and a housekeeping cleaner. (R. at 31-32.) Thus, the ALJ concluded Fansler was not under a disability as defined by the Act, and she was not eligible for SSI and DIB benefits. (R. at 33.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2020).

After the ALJ issued his decision, Fansler pursued her administrative appeals, (R. at 398-404), but the Appeals Council denied her request for review. (R. at 1-5.) Fansler then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2020). This case is before this court on Fansler's motion for summary judgment filed April 19, 2021, and the Commissioner's motion for summary judgment filed May 19, 2021.

## II. Facts

Fansler was born in 1982, (R. at 46, 222), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a high school

---

[2] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2020).

education and past work as a cashier/checker, a head cashier, a sales attendant for building materials, a dental assistant and an insurance policyholder information clerk. (R. at 46-48, 71-72.) She testified she was terminated from her job as a patient account representative due to exhausting all her leave under the Family and Medical Leave Act, ("FMLA").[3] (R. at 49-50.) However, Fansler also reported she lost her job as a patient account representative due to a merger of two regional healthcare systems. (R. at 452.) Fansler testified that, prior to being terminated, she was suspended from work for three days after a "personality clash" with a co-worker. (R. at 52.) Fansler testified she experienced four severe panic attacks prior to leaving her house to appear for her hearing. (R. at 56.)

Fansler cared for her teenage son and was able to engage in activities, such as exercising daily on her treadmill and doing yoga. (R. at 296, 536, 543, 665, 668, 673.) In response to a pain questionnaire, Fansler stated, "I do not experience pain." (R. at 292.) Fansler reported she could pay attention for as long as needed, and she followed written and spoken instructions "very well." (R. at 279.) While she reported she did not handle stress or changes in routine well, she got along with authority figures "very well." (R. at 280.) She had never been fired or laid off from a job due to problems getting along with others. (R. at 280.)

Paula Hunt, ("Hunt"), Fansler's mother, also was present and testified at Fansler's hearing. (R. at 64-70.) Hunt testified Fansler had taken her medication for anxiety that morning, but had several panic attacks before leaving the house. (R. at 65.) She believed counseling was helping Fansler. (R. at 66.) Hunt stated, at times, she had to ask or make Fansler take a shower, and she would have to sit in

---

[3] Fansler testified the predominant reason for using leave under the FMLA was based on irritable bowel syndrome, a panic disorder and anxiety with panic disorder. (R. at 50-51.)

the bathroom with her while she showered. (R. at 67.) She stated she or her husband would have to go to the bathroom with Fansler and hold her hand if she had severe cramps and pain associated with her bowel movements. (R. at 67.) Hunt stated Fansler was never left alone. (R. at 67.)

Mark Hileman, a vocational expert, was present and testified at Fansler's hearing. (R. at 71-75.) Hileman was asked to consider a hypothetical individual of Fansler's age, education and work history, who had the residual functional capacity to perform medium work in an environment free of fast-paced production requirements that involved simple work-related decisions, and few, if any, workplace changes; who could have no interaction with the public; who could have only occasional interaction with co-workers; and who might be absent from the workplace periodically, but no more than one day a month. (R. at 72-73.) He stated such an individual could not perform Fansler's past work, but other work existed in significant numbers that such an individual could perform, including jobs as a laundry laborer and a cleaner. (R. at 73.) Hileman then was asked to consider the same hypothetical individual, but who would be limited to light work.[4] (R. at 74.) He stated such an individual would be able to perform the jobs of a clothing bagger and a housekeeping cleaner. (R. at 74.)

In rendering his decision, the ALJ reviewed records from Linda Dougherty, Ph.D., a state agency psychologist; Dr. Bert Spetzler, M.D., a state agency physician; Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Robert McGuffin, M.D., a state agency physician; Holston Medical Group; Michael

---

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2020).

McDonough, Ed.D., a licensed professional counselor; Jorge F. Fuchs, M.A., a licensed senior psychological examiner; and Wellmont Medical Associates.

In 2016, Fansler was seen by Lisa Lundy, F.N.P., a family nurse practitioner with Holston Medical Group, who diagnosed her with constipation; abdominal pain, epigastric; benzodiazepine dependence, episodic; panic disorder without agoraphobia; right arm numbness; muscle spasm. (R. at 474-75, 485, 495.) In April 2016, Fansler reported doing well on Effexor, and she could not remember the last time she had a panic attack. (R. at 492.) She complained of a burning sensation in her neck and tingling in her right arm. (R. at 492.) X-rays of Fansler's cervical spine showed mild degenerative disc disease at the C5-C6 disc space. (R. at 488.) In May 2016, Fansler reported Linzess relieved her gastrointestinal symptoms. (R. at 472.) During this time period, Fansler's abdominal examinations were normal; she had intact insight and judgment; her mood and affect were normal; and her recent and remote memory were not impaired. (R. at 474, 484-85, 495.)

On August 23, 2017, Fansler was seen at Wellmont Medical Associates for her annual examination. (R. at 758-70.) She denied gastrointestinal problems, and her examination was normal, including normal mood, affect and behavior. (R. at 760-61.)

On February 22, 2018, Fansler saw Lundy and reported she was under a lot of stress and felt overwhelmed and shaky. (R. at 463.) She also reported headaches and right shoulder and arm pain with numbness and tingling. (R. at 463.) X-rays of Fansler's cervical spine showed mild disc space narrowing at the C5-C6 disc space. (R. at 462.) Fansler's examination was normal. (R. at 465.) Lundy diagnosed neck pain, right arm numbness and cervicalgia. (R. at 466.)

On April 11, 2018, Fansler complained of chronic constipation and stated her anxiety had increased due to family deaths. (R. at 457.) She stated she had not been taking Linzess regularly because it was expensive. (R. at 457.) On examination, Fansler had diminished bowel sounds, but her abdomen was non-tender. (R. at 460.) On mental status examination, Fansler's insight and judgment were intact, and her affect and mood were normal. (R. at 460.) Lundy assessed constipation, esophageal reflux and hemorrhoids and prescribed medications. (R. at 460.) Lundy also requested a gastroenterology consultation, but the record does not show Fansler followed through on the referral. (R. at 460.) On May 18, 2018, Fansler reported having panic attacks and anxiety due to the loss of her grandparents and job loss "due to the merger." (R. at 452.) Despite her complaints, her mental status examination was normal. (R. at 455.) Lundy diagnosed generalized anxiety disorder with panic attacks; panic attacks; agoraphobia with panic attacks; and benzodiazepine dependence, continuous. (R. at 455.) Fansler's medications were adjusted. (R. at 455-56.)

On June 1, 2018, Fansler reported her medication had been effective, as her diarrhea had subsided. (R. at 443.) She stated she suffered from grief and continued to have severe anxiety. (R. at 443.) Fansler's abdominal examination was normal; she had intact insight and judgment; her mood and affect were normal; and her recent and remote memory were not impaired. (R. at 446.) On June 7, 2018, Fansler reported she was moody after tapering off her Effexor. (R. at 438.) Her examination remained unchanged. (R. at 441.) On June 14, 2018, Fansler reported she was no longer having "brain zaps" and was tolerating coming off her medication other than having emotional outbursts. (R. at 433.) On June 27, 2018, Fansler reported doing better on medication. (R. at 428.) Fansler's abdominal

examination was normal; she had intact insight and judgment; her mood and affect were normal; and her recent and remote memory were not impaired. (R. at 431.)

On July 12, 2018, Fansler reported she drove herself to Walmart and was able to go shopping without having a panic attack. (R. at 423.) She reported it was "rare" that she had to take Xanax and was using Unisom for sleep. (R. at 423.) Her examination remained unchanged. (R. at 426.) On July 24, 2018, Fansler reported that she was "emotional all of the time." (R. at 564.) She stated she wanted to be left alone and did not want to talk to anyone. (R. at 564.) Lundy reported Fansler's insight and judgment were intact; her affect and mood were normal; and her recent and remote memory were not impaired. (R. at 567.)

On August 20, 2018, Fansler sought treatment for flu-like symptoms. (R. at 575.) It was noted Fansler was tearful and anxious, but her insight and judgment were intact. (R. at 575, 578.) On September 23, 2018, although Fansler reported therapy was helping, she stated she was extremely anxious all the time. (R. at 552.) Lundy reported Fansler's insight and judgment were intact, and her mood and affect were normal. (R. at 556.)

From September 2018 through December 2019, Fansler saw Michael McDonough, Ed.D., a licensed professional counselor and licensed clinical psychologist, for individual therapy.[5] (R. at 502-09, 528-37, 663-74.) Fansler described herself as a "hypochondriac." (R. at 503.) She reported having agoraphobia and feeling guilty for not attending her son's football games, but she was later able to attend half of a football game and play catch. (R. at 502.) Fansler

---

[5] The record contains additional records from McDonough; however, these documents are illegible. (R. at 625-37.)

reported finding her mother collapsed against a wall, and McDonough noted this may provide insight as to why Fansler does not want to leave home. (R. at 506.) Fansler repeatedly reported grief over the death of her grandparents and a classmate; concern over her mother's physical condition; problems with her teenage son; and finances. (R. at 502-08, 531-32, 534, 663-65, 667, 671.) Fansler reported visiting with a friend; showering several times a week; eating out at a restaurant with her son; leaving the house daily; driving to Kingsport with her mother and going into a store unaccompanied; walking on the treadmill daily; dating; and attending the wedding of a friend. (R. at 504, 508, 535-36, 668, 670, 673.)

On October 10, 2018, Jorge F. Fuchs, M.A., a licensed senior psychological examiner,[6] evaluated Fansler at the request of Disability Determination Services. (R. at 510-14.) Fansler was driven to the evaluation by her mother. (R. at 510.) Fuchs reported Fansler was well-groomed; she was tearful and extremely anxious, but this improved as the session progressed; she was cooperative; she had some concentration, attention and focus difficulties; she was able to perform serial sevens accurately; her abstract reasoning was "quite good;" and her common-sense reasoning was adequate. (R. at 510, 512.) Fansler reported she was "let go" from Ballad Health after missing a great deal of work due to emotional difficulties and stress. (R. at 511.) For activities, she reported watching television; playing Candy Crush on her cell phone; contacting friends via telephone or Facebook Messenger; and doing some housework such as cleaning the kitchen, sweeping, mopping and washing clothes. (R. at 512-13.) Fuchs assessed panic disorder; agoraphobia; and unspecified depressive disorder with dependent personality features and traits. (R. at 513.) Fuchs opined Fansler had moderate limitations in understanding and

---

[6] This report was also signed by Preston Visser, Ph.D., a licensed clinical psychologist.

remembering and in social interactions and adaptation and marked limitations in sustaining concentration and persistence. (R. at 513.) He also found Fansler had difficulty making decisions; carrying out instructions, at times; behaving in a way in which she would not distract others; and setting goals and making plans independent of others. (R. at 513.)

On October 31, 2018, Fansler was seen at Wellmont Medical Associates for her annual examination. (R. at 728-42.) She denied gastrointestinal problems. (R. at 732.) Fansler's examination was normal, including normal mood, affect and behavior. (R. at 732-33.) On November 13, 2018, Fansler reported her anxiety was fine with Lexapro, and she had not had a panic attack in three weeks. (R. at 543.) Lundy reported Fansler's insight and judgment were intact; her affect and mood were normal; and her recent and remote memory were not impaired. (R. at 546.)

On December 5, 2018, Dr. Bert Spetzler, M.D., a state agency physician, completed a medical assessment, finding Fansler could perform medium work. (R. at 88-89.) He found Fansler had no postural, manipulative, visual, communicative or environmental limitations. (R. at 88-89.)

On December 27, 2018, Linda Dougherty, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Fansler suffered from severe anxiety and obsessive-compulsive disorders and depressive, bipolar and related disorders. (R. at 85-86.) She opined Fansler had moderate limitations on her ability to understand, remember or apply information; to interact with others and to concentrate, persist or maintain pace; and mild limitations on her ability to adapt or manage herself. (R. at 86.)

That same day, Dougherty also completed a mental assessment, indicating Fansler had moderate limitations in her ability to understand, remember and carry out detailed instructions; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 89-91.) Dougherty stated Fansler's work-related mental abilities were, otherwise, not significantly limited. (R. at 89-90.) Dougherty opined Fansler could perform simple tasks and interact socially with the public and co-workers in brief, superficial situations, but she must avoid jobs with large crowds. (R. at 86, 91.)

On January 7, 2019, Fansler reported she had recently been to the emergency room because she thought she was having a heart attack, but left without seeing a doctor. (R. at 582-83.) She denied chest pain and related these symptoms to her stomach issues, stating she had loose stools for the past few days due to her diet. (R. at 582.)

On February 1, 2019, Howard S. Leizer, Ph.D., a state agency psychologist, completed a PRTF, finding Fansler suffered from severe anxiety and obsessive-compulsive disorders and depressive, bipolar and related disorders. (R. at 120-121.) He opined Fansler had moderate limitations on her ability to understand, remember or apply information; to interact with others; and to concentrate, persist or maintain pace; and mild limitations on her ability to adapt or manage herself. (R. at 121.)

That same day, Leizer also completed a mental assessment, indicating Fansler had moderate limitations in her ability to understand, remember and carry out detailed instructions; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 124-26.) Leizer stated Fansler's work-related mental abilities were, otherwise, not significantly limited. (R. at 125-26.) Leizer opined Fansler could perform simple tasks and interact socially with the public and co-workers in brief, superficial situations, but she must avoid jobs with large crowds. (R. at 121, 126.)

On February 1, 2019, Dr. Robert McGuffin, M.D., a state agency physician, completed a medical assessment, finding Fansler could perform medium work. (R. at 123-24.) He opined Fansler had no postural, manipulative, visual, communicative or environmental limitations. (R. at 124.)

On February 13, 2019, Fansler reported her anxiety had improved, and she had not had a "full blown panic attack" in the past six weeks. (R. at 618.) Fansler stated she was doing "fine" on Lexapro. (R. at 618.) Lundy reported Fansler's insight and judgment were intact; her mood and affect were normal; and her recent and remote memory were not impaired. (R. at 621.)

On June 20, 2019, Fansler endorsed issues with short-term and immediate memory, which she attributed to anxiety and panic. (R. at 664.) McDonough reported Fansler's overall level of problem solving was appropriate. (R. at 664.)

On June 29, 2019, Fansler reported "for the most part I've felt good." (R. at 664.) On July 6, 2019, Fansler reported being passionate about helping others. (R. at 664.) On July 13, 2019, Fansler reported lower levels of anxiety since discontinuing Sudafed. (R. at 665.) On August 9, 2019, Fansler stated she had been offered a job by a previous employer, but she did not feel she could handle the type of calls involved in the job. (R. at 666.)

On August 12, 2019, McDonough completed a mental assessment, finding Fansler had moderate impairments on her ability to ask simple questions or request assistance and to accept instructions and respond appropriately to criticism from supervisors. (R. at 588-91.) He found she had a severely limited, but not precluded, ability to understand and remember very short and simple instructions; to sustain an ordinary routine without special supervision; to interact appropriately with the general public; to get along with co-workers or peers without distracting them or exhibiting behavior extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to be aware of normal hazards and take appropriate precautions; and to set realistic goals or make plans independently of others. (R. at 588-90.) McDonough opined Fansler had no useful ability to remember locations and work-like procedures; to understand, remember and carry out detailed instructions; to carry out very short and simple instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; to respond appropriately to changes in the work setting; and to travel in unfamiliar places or use public transportation. (R. at 588-90.) He reaffirmed his opinion in an email in 2020. (R. at 675.)

On August 16, 2019, Fansler reported therapy was helpful and had "been a game changer." (R. at 613.) Lundy reported Fansler's insight and judgment were intact. (R. at 616.) On August 17, 2019, Fansler reported the death of a classmate due to a motorcycle accident. (R. at 667.) She stated she had a two-hour phone call with her classmate's mother and widow, the head of the motorcycle club and the authorities at the high school they both attended to organize a celebration of life, and she planned to read a poem at this event. (R. at 667, 670.) She was wearing makeup at her appointment because she was having her stepfather's friends at her home that day. (R. at 667.)

On September 3, 2019, Fansler reported she did not want to change her medications because she was comfortable with them. (R. at 600.) She stated she had not had a full-blown panic attack in a few weeks, and she "sleeps like a baby." (R. at 600, 603.) Lundy reported Fansler's insight and judgment were intact; her mood and affect were normal; and her recent and remote memory were not impaired. (R. at 603.) On September 13, 2019, Fansler stated she would like a place of her own for her and her son. (R. at 669.) She stated she would like to work, but was not sure what she "might or can do." (R. at 669.) Fansler spoke about possibly doing make-up videos, but later stated she was undecided about getting involved in the "make-up scheme." (R. at 669.)

On November 20, 2019, Fansler explained a situation where she was supposed to inherit property, and that she had spoken to banks and lawyers about this. (R. at 672.) On November 20, 2019, Fansler was seen at Wellmont Medical Associates for her annual exam. (R. at 700-17.) She reported she was "doing well." (R. at 700.) Fansler denied diarrhea; constipation; abdominal pain; and psychiatric/behavioral problems. (R. at 703.) Her examination was normal. (R. at

703-04.) On December 21, 2019, Fansler stated she would "like to help people."
(R. at 673.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI
claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2020). *See also Heckler v. Campbell*,
461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981).
This process requires the Commissioner to consider, in order, whether a claimant
1) is working; 2) has a severe impairment; 3) has an impairment that meets or
equals the requirements of a listed impairment; 4) can return to her past relevant
work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§
404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is
not disabled at any point in this process, review does not proceed to the next step.
*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2020).

Under this analysis, a claimant has the initial burden of showing that she is
unable to return to her past relevant work because of her impairments. Once the
claimant establishes a prima facie case of disability, the burden shifts to the
Commissioner. To satisfy this burden, the Commissioner must then establish that
the claimant has the residual functional capacity, considering the claimant's age,
education, work experience and impairments, to perform alternative jobs that exist
in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B);
*McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-
65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Fansler argues the ALJ erred by improperly determining her residual functional capacity by failing to properly consider the opinions of her treating counselor and the consulting examiner. (Plaintiff's Memorandum In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-17.) Fansler argues the ALJ failed to properly evaluate her subjective allegations and erred by dismissing her mother's hearing testimony. (Plaintiff's Brief at 5-10, 15-17.) Fansler also argues the ALJ erred by failing to properly consider the opinions of her treating counselor and the consulting examiner. (Plaintiff's Brief at 10-14.)

Because this matter involves a claim filed after March 27, 2017, a new regulatory framework applies to the ALJ's evaluation of medical opinions in the record. For applications filed on or after March 27, 2017, the Social Security Administration, ("SSA"), has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). Under the new regulations, ALJs no longer are required to assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2020) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[7]

---

[7] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2020). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and

Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case record based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2020) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2020).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2020).[8] In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing the consistency factor, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and

---

psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5) (2020).

[8] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The new regulations also alter the way the ALJ discusses the medical opinions or findings in the text of the decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he considered each of them. Instead, when articulating his finding about whether an opinion is persuasive, the ALJ need only explain how he considered "the most important factors" of supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. *See* 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3) (2020).

When the ALJ finds two or more opinions or findings about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must consider the most persuasive factors, including the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(b)(3), (c)(3)-(5), 416.920c(b)(3), (c)(3)-(5).

Fansler argues the ALJ erred by improperly determining her residual functional capacity by failing to properly consider the opinions of her treating counselor and the consulting examiner. (Plaintiff's Brief at 5-17.) A claimant's residual functional capacity refers to the most the claimant can still do despite her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2020). The residual

functional capacity assessment is based on all the relevant evidence, including the medical records, medical source opinions and the individual's subjective allegations and description of her own limitations. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The ALJ found Fansler had the residual functional capacity to perform medium work in an environment free of fast-paced production requirements that involved only simple work-related decisions and that required few, if any, workplace changes; that did not require interaction with the public; that required no more than occasional interaction with co-workers; and that allowed her to be absent from the workplace no more than one day a month. (R. at 23.)

In making his residual functional capacity finding, the ALJ stated he found Visser's opinion[9] "less persuasive" than the opinions of the state agency psychologists and "largely inconsistent" with the overall record. (R. at 30.) The ALJ noted this opinion was based on a one-time examination, and it was not supported by the overall record. (R. at 30.) The ALJ noted that, although Fansler had significant mood and affect issues during the evaluation, she was able to repeat three words immediately and two out of three after a five-minute delay; she demonstrated general knowledge and awareness of current events; she could perform serial sevens accurately, but in a slow manner; she demonstrated general knowledge and awareness of current events; her abstract reasoning was good; and she was able to estimate the prices of numerous items despite stating she did not go to the grocery store. (R. at 30, 512.) The ALJ noted these findings did not support a marked limitation in concentration and persistence. (R. at 30.) In addition, the ALJ noted Fansler's counselor did not note significant mental status abnormalities other

---

[9] The court notes this examination was performed by licensed senior psychological examiner Fuchs and signed by both Fuchs and Visser.

than some mood and affect issues, which were noted while discussing distressing events. (R. at 30, 502-08, 532-34, 663-65, 667, 671.)

The ALJ found McDonough's opinion that Fansler had marked to extreme limitations in most areas of mental functioning was "not persuasive" and "inconsistent." (R. at 30-31.) The ALJ noted McDonough's opinion was not supported by his examination findings, as he regularly noted a variable mood and affect, but no other significant mental status abnormalities. (R. at 31, 528-37, 673-74.) He further found McDonough's opinion was inconsistent with the overall record. (R. at 31.) The record routinely shows Fansler had intact insight and judgment; her mood and affect were normal; and her recent and remote memory were not impaired. (R. at 431, 446, 455, 460, 465, 474, 485, 495, 546, 567, 578, 603, 616, 621, 733, 761.) In fact, Fansler reported her medication was effective in helping with her panic attacks, and she stated therapy was helpful. (R. at 492, 543, 552, 613, 618.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ found the state agency psychologists' opinions "persuasive" and "consistent." (R. at 29-30, 85-86, 89-91, 120-21, 124-26.) As noted above, the record shows Fansler routinely had normal mental examination findings, including a normal mood and affect; intact judgment and insight; and normal recent and remote memory. (R. at 30.) Fansler reported taking care of her teenage son, including helping with homework; watching television; playing Candy Crush on her cell phone; contacting friends via telephone or Facebook Messenger; doing housework; organizing a celebration of life event for a deceased classmate; visiting friends; and leaving the house daily. (R. at 296, 504, 508, 512-13, 535-36, 667-68,

670, 673.) In addition, she stated she would like a place of her own for her and her son, and she enjoyed helping people. (R. at 664, 669, 673.)

The ALJ also found the state agency physicians' opinions "persuasive" and "consistent" with the overall evidence of record. (R. at 30, 88-89, 123-24.) The ALJ noted Fansler's irritable bowel syndrome generally was controlled with medication, and she rarely complained of neck pain. (R. at 30, 443, 472.) X-rays showed mild cervical degenerative disc disease. (R. at 462, 488.) Fansler often had normal abdominal and musculoskeletal findings and often denied gastrointestinal problems. (R. at 431, 465, 474, 484, 495, 703-04, 732, 760-61.) Furthermore, the ALJ noted Fansler engaged in a variety of activities, including exercising daily, and she admitted she had no pain. (R. at 28, 292, 536, 543, 665, 668, 673.)

Fansler next argues the ALJ failed to properly evaluate her subjective allegations and erred by dismissing her mother's hearing testimony. (Plaintiff's Brief at 5-10, 15-17.) The claimant's subjective allegations of pain or other symptoms, alone, can never establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) (2020); *see also* Social Security Ruling, ("SSR"), 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). Rather, the ALJ must consider "the extent to which [statements about subjective] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in the record. 20 C.F.R. §§ 404.1529(a), 416.929(a). This Circuit has established a two-step process for determining whether a claimant is disabled by pain or other symptoms. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, a claimant must provide objective medical evidence showing that a medical impairment exists, which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms

alleged. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b) (2020); *Craig*, 76 F.3d at 594. If the claimant meets this threshold obligation, the ALJ then considers the intensity and persistence of the claimant's pain or other symptoms and the extent to which it affects her ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c) (2020); *Craig*, 76 F.3d at 595.

The ALJ has the sole responsibility to weigh the claimant's complaints against the record as a whole, and he may discount them when they are unsupported. *See Craig*, 76 F.3d at 592-95. Here, the ALJ found Fansler's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (R. at 28.) The ALJ considered Fansler's claims that she was unable to work due to panic disorder, anxiety and irritable bowel syndrome. (R. at 28.) In addition, the ALJ considered the testimony of Fansler's mother, as well as a function report completed by her mother, and found them to be largely consistent with Fansler's testimony and function report. (R. at 24-25.) The ALJ noted that, to the extent the third-party function report constituted an opinion, it was "not persuasive" because it did not contain specific work-related limitations, and it was "inconsistent" with the record. (R. at 25.)

As discussed above, the ALJ noted Fansler's mental status examinations were normal, and she was treated with medication and therapy. (R. at 25.) The ALJ noted Fansler's irritable bowel syndrome generally was controlled with medication, and she rarely complained of neck pain. (R. at 30, 443, 472.) In fact, Fansler admitted she did not experience pain. (R. at 292.) Additionally, as the ALJ pointed out, Fansler's reports of activities to her counselor varied – at times she

said she did not leave her house, but at other visits she noted going out to eat; having conversations with a close friend; enjoying Halloween with her son, niece and nephew; helping her friend who lost a grandparent by spending time at the friend's house; dating; organizing a "celebration of life" event for a former classmate, at which she planned to read a poem; and attending a wedding. (R. at 26, 506, 532, 535-36, 667, 670.)

By her own admission, Fansler could follow written and spoken instructions "very well," she got along "very well" with authority figures, and she was never fired from a job because of problems getting along with others. (R. at 279-80.) Based on this, I find the ALJ appropriately relied on Fansler's daily activities when evaluating her subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2020) (ALJ may rely on daily activities when evaluating the claimant's symptoms); *Mastro v. Apfel,* 270 F.3d 171, 179-80 (4th Cir. 2001) (the ALJ properly considered claimant's activities in concluding that her impairment did not keep her from working); *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life."); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (finding continued work activity and daily physical activities supported the ALJ's non-disability finding); *Gross*, 785 F.2d at 1166 (claimant's pattern of daily activities suggested non-disability).

Based on this, I find that substantial evidence exists to support the ALJ's consideration of the medical evidence and his residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now

submits the following formal findings, conclusions and recommendations:

1.   Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2.   Substantial evidence exists in the record to support the ALJ's finding as to Fansler's subjective complaints;

3.   Substantial evidence exists in the record to support the ALJ's residual functional capacity finding; and

4.   Substantial evidence exists in the record to support the Commissioner's finding that Fansler was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Fansler's motion for summary judgment and grant the Commissioner's motion for summary judgment.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The

judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     December 20, 2021.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE